## United States District Court
## Northern District of Indiana
## Hammond Division

| | | |
|---|---|---|
| SOUTHSHORE BASEBALL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:08-CV-313  JVB |
| | ) | |
| ARAMARK SPORTS AND | ) | |
| ENTERTAINMENT SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on Plaintiff Southshore's motion for summary judgment (DE 26). Also pending are Southshore's two  motions for hearing, its motion for a status conference, and Defendant Aramark's motion for leave to file a sur-response, which Southshore opposes. The Court determines that it has jurisdiction on the basis of the allegations of citizenship set out in Aramark's amended notice of removal (DE 12).  Because neither oral argument nor additional briefing will aid the Court in deciding the summary judgment motion, Southshore's motions for hearing (DE 9 and DE 28) and Aramark's motion for leave to file a sur-response (DE 42) are DENIED. Gently reminding the Court that baseball season is upon us and that Southshore would be grateful for a ruling on its summary judgment motion sooner rather than later was the apparent motivation for Southshore's motion for a status conference. Accordingly the motion (DE 51) is DENIED as moot.

**(A) Background**

Southshore operates the Gary Southshore RailCats, a minor league baseball team. Aramark provides concession services at Gary Southshore RailCats Field under a contract with Southshore dated November 7, 2003. Southshore states in its complaint that neither party is in breach of the contract, but Southshore wishes to terminate it. To that end, Southshore sued in state court for a judgment declaring that it has the right to terminate the contract without breach provided it pays the termination payment required by Section 9 of the contract. Aramark removed the action to Federal Court.

**(B) Summary Judgment Standard**

Summary judgment is appropriate if the court finds that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

**(C) Discussion**

The issue before the Court is whether, as a matter of Indiana law, Section 9 of the Concession Agreement between the parties gives Southshore the right to terminate the agreement at any time for any reason as long as Southshore pays the termination fee called for in that section.[1] Despite the fact that this is a summary judgment motion, neither party relied on any matters outside the pleadings to support their interpretation of the contract.[2] Southshore

---

[1]Section 31 of the agreement provides, and the parties agree, that Indiana law governs the interpretation of the agreement.

[2]The Concession Agreement, which Southshore attached to its complaint as Exhibit A, is a part of the complaint for all purposes. *See* Federal Rule of Civil Procedure 10(c)

contends that the contract is unambiguous, so that it would be inappropriate for the Court to look outside the four corners of the document. Aramark asserts that a consistent reading of the entire contract does not support Southshore's interpretation.

The goal of contract interpretation is to give effect to the parties' intent. The unambiguous language of a contract is conclusive and binding on the parties and the court; the parties' intent is determined from the four corners of the document. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. App., 2007). When trying to ascertain the parties' intent the Court must read the contract as a whole and will make every effort to construe its language so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* Moreover, in discerning the meaning of a contract term, a court must also apply its general knowledge of how the business world operates. *Beanstalk Group, Inc., v. AM Gen. Corp.*, 283 F.3d 856, 862 (7th Cir. 2002).

The contract provision that Southshore contends gives it the right to terminate the contract is as follows:

> 9. TERMINATION PAYMENT; ACCELERATION OF GRANT
> INSTALLMENTS:
>
> A. <u>Amount of Termination Payment</u>:    Upon the expiration of the Term, or in the event this Agreement is terminated by the Operator [Southshore] at any time for any reason, other than as set forth in the next sentence, prior to the expiration of the Term, Operator agrees...to pay to ARAMARK...an amount equal to the Unamortized Balance. The foregoing notwithstanding, the Termination Payment shall not be payable to ARAMARK in the event of a termination of this

3

Agreement by Operator pursuant to Section 28.A.4 or 28.A.5 hereof where an

Intentional Default has occurred.

Agreement at 10.

According to Southshore Section 9(C) extinguishes any other remedy for termination

once it makes the termination payment:

> C. <u>Remedies</u>: In the event that ARAMARK does not receive the Termination Payment from Operator at the time provided therefor, ARAMARK may, at its option, exercise the following remedies: (i) remain at the Facility; (ii) continue to provide the Concession Services; (iii) withhold all Concession Services Commissions otherwise payable to Operator until ARAMARK has recovered all amounts owing and/or (iv) institute proceedings against Operator for all amounts owning. The aforesaid remedies shall not be available to ARAMARK in the event that ARAMARK has recovered the total amount of the Termination Payment.

*Id.* at 11.

Paragraph 28 provides, in part:

> 28. TERMINATION: In addition to any other provision herein which confers a right of termination on Operator or ARAMARK, this Agreement may be terminated as follows:
> A. <u>Termination by Operator</u>: Operator shall have the right to terminate this Agreement by giving thirty (30) days' prior written notice thereof if any of the following events shall occur....

*Id.* at 29.

Under Section 28, the events giving rise to a right of termination are Aramark's

insolvency (Section 28.A.1), adjudication of bankruptcy (Section 28.A.2), the filing of a petition

under the bankruptcy laws or any other insolvency laws against Aramark (Section 28.A.3),

Aramark's failure to pay any sum due under the contract which is not cured within ten days of

the notice of default (Section 28.A.4), and Aramark's default of any other material obligation

that remains uncured for thirty days, or for a reasonable period of time, if the default is of such a

nature that it cannot reasonably be cured within 30 days (Section 28.A.5).

Paragraph 25 states that "ARAMARK shall have the right to terminate" the Agreement if the Facility is damaged by fire or other casualty and full operation cannot be restored within 90 days. *Id.* at 28.

Reading the contract as a whole, the Court does not agree with Southshore that, as a matter of law, Section 9 confers on Southshore a right to terminate the agreement at any time for any reason if Southshore pays a termination fee. A more reasonable interpretation is that Section 9 sets out the circumstances under which Southshore is required to pay a termination fee "in the event that" Southshore terminates the Agreement at any time for any reason, whereas Section 28 sets out the circumstances and manner in which Southshore may terminate the Agreement without being in breach. Significantly, in both Section 25 and Section 28 the parties employ the words "shall have the right to terminate this Agreement" to unambiguously confer termination rights. No similar language granting a right to terminate is found in Section 9.

It is unlikely that the parties intended to allow Southshore to send Aramark packing on a whim, without any prior notice, the day after the start of baseball season (after Aramark pays its $40,000 annual fee as required by another contract provision) by paying a termination fee, even when it is performing all its obligations under the contract, but that Southshore must give Aramark thirty days prior written notice and the opportunity to cure if Aramark has not made the payments required by the contract or is otherwise in material breach of the contract. A literal reading of the contract does not require such a conclusion and it is improbable that this was the parties' intent.

Neither does the Court agree that Section 9(C) extinguishes all other remedies once the

Termination Payment is made. An alternate plausible reading is that the remedies afforded by

Section 9(C) for failure to make the Termination Payment are extinguished once the Termination

Payment has been recovered. This conclusion is supported by Section 32:

> 32. NO WAIVER; REMEDIES: [N]othing contained in this Agreement shall be construed as a waiver of any rights either party hereto may have to seek damages, or specific performance, or other appropriate remedies from the other for breach of this Agreement.

> *Id.* at 35.

Southshore would have the Court read Section 9 as though it provided "Notwithstanding

the limited rights of termination conferred by Section 28 of the Agreement, Southshore shall

have the absolute right to terminate the Agreement at any time, without notice, for any reason,

upon payment of the Termination Fee." Indeed, the Court would expect explicit language of this

sort, unequivocally conferring a right to terminate at will, if the parties intended to provide for

such a right.

Finally, the Court is not persuaded by Southshore's argument that Section 9 must provide

Southshore with a right of termination in order to give meaning to the language of Section 28

"In addition to any other provision herein which confers a right of termination on Operator

[Southshore] or ARAMARK, this Agreement may be terminated as follows." *Id.* at 29. It is true

that Aramark has pointed no contract provision other than Section 28 which grants Southshore a

right of termination, but Section 28 does not promise absolutely that there is such a right

elsewhere in the contract. While the Court must make every effort to give meaning to all words

and phrases in the Agreement, it will not adopt an improbable interpretation of Section 9 to

fulfill this not-existent promise.

**(D) Conclusion**

For the foregoing reasons, Southshore's motion for summary judgment (DE 26) is

DENIED.

SO ORDERED on March 6, 2009.


                                   s/ Joseph S. Van Bokkelen
                                   Joseph S. Van Bokkelen
                                   United States District Judge